## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 4-CR-14-275 |
| v. | : | (JUDGE MANNION) |
| THUNG VAN HUYNH, | : | |
| Defendant | : | |

**FILED**
**SCRANTON**
DEC 2 2 2016
Per_____
DEPUTY CLERK

### MEMORANDUM

Before the court are defendant Thung Van Huynh's counseled Motion to Dismiss Count One as Duplicitous, (Doc. 142), Motion to Change Venue, (Doc. 144), as well as his Motion in Limine, (Doc. 146).[1] Defendant Huynh claims that Count One of the Superseding Indictment should be dismissed because it joins two offenses as objects of the same conspiracy, that he is entitled to have the venue of his case transferred to the Central District of California, and that any reference to individuals or entities as victims in this case should be precluded at trial. For the reasons set forth below, the court will deny all three motions.

By way of relevant background, on November 12, 2015, defendant

---

[1]The court scheduled the final pre-trial conference in this case for December 21, 2016, and the trial for January 23, 2017. (Doc. 149). However, on December 14, 2016 Huynh filed an unopposed motion for a continuance of the final pre-trial conference and the trial. (Doc. 157). Huynh's motion was granted as to a continuance of the final pre-trial conference which was rescheduled for January 11, 2017, but it was denied with respect to the trial. (Doc. 158).

Huynh along with three others were indicted and charged in a Superseding Indictment with conspiracy to commit wire and bank fraud in violation of 18 U.S.C. §1349, (Count One), wire fraud in violation of 18 U.S.C. §1343, (Counts Two and Three), conspiracy to commit fraud in connection with identification documents in violation of 18 U.S.C. §1028(f), (Count Four), and aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1), (Count Five). (Doc. 54).[2]

On March 23, 2016, defendant Huynh was arraigned and pled not guilty to all counts of the Superseding Indictment. (Doc. 88). The defendant was then detained. (Doc. 89).

On October 21, 2016,defendant Huynh filed a Motion to Dismiss Count One of the Superseding Indictment as Duplicitous, (Doc. 142), and his brief in support of his motion, (Doc. 143). Also, on October 21, 2016,defendant Huynh filed a Motion to Change Venue, (Doc. 144), and his brief in support, (Doc. 145), as well as his Motion in Limine, (Doc. 146), and brief in support, (Doc. 147).

After being granted an extension of time, the government filed its briefs in opposition to defendant Huynh's motions on December 1, 5 and 7, 2016. (Doc. 154, Doc. 155, Doc. 156).

---

[2]The three co-defendants of Huynh, Tung Thanh Doan, John Quanghoang Nguyen and Phil Nguyen, pled guilty and are incarcerated awaiting sentencing.

On December 15, 2016, Huynh filed a reply brief regarding his Motion to Change Venue. (Doc. 159). On December 19, 2016, Huynh filed a reply brief regarding his Motion to Dismiss Count One of the Superseding Indictment. (Doc. 160). The court has assumed that the defendant chose not to file a reply brief in relation to his Motion in Limine, since the deadline for doing so has passed pursuant to MDPA LR 7.7.

## I.    Motion to Dismiss Count One

The court will first address defendant Huynh's Motion to Dismiss Count One of the Superseding Indictment as Duplicitous. (Doc. 142). Defendant filed his motion under Fed.R.Crim.P. 8(a) and argues it should be dismissed because it joins two offenses, namely, wire fraud and bank fraud, as objects of the same conspiracy which was charged under 18 U.S.C. §1349. The objects alleged by the conspiracy count (Count One) included wire fraud which affected financial institutions in violation of 18 U.S.C. §1343 and bank fraud in violation of 18 U.S.C. §1344.

Rule 8(a) provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged— [] — are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."

In U.S. v. Rigas, 605 F.3d 194, 210 (3d Cir. 2010), the Third Circuit

3

stated:

> Duplicity is the improper joining of distinct and separate offenses in a single count. Duplicitous counts may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing. U.S. v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998) (internal citations omitted). An impermissibly duplicitous indictment is subject to dismissal.

See also U.S. v. Sourlis, 953 F.Supp. 568, 572 (D.N.J. 1996)(quoting U.S. v. Starks, 515 F.2d 112, 116 (3d Cir. 1975)) ("Duplicity is the joining in a single count of two or more distinct and separate offenses.").

"An indictment is not duplicitous in cases where the indictment does not charge different offenses in the same count, but instead charges different methods of completing the same offense." Sourlis, 953 F.Supp. at 572. In fact, Fed.R.Crim.P. 7(c)(1) "authorize[s] charging two different methods of committing a crime in a single count." Id. Further, the court in Sourlis, 953 F.Supp. at 572, stated:

> When considering whether duplicity exists within an indictment, a court's review is limited because "the task is not to review the evidence ... to determine whether it would support charging several crimes rather than just one, but rather solely to assess whether the indictment itself can be read to charge only one violation in each count." United States v. Mastelotto, 717 F.2d 1238, 1244 (9th Cir. 1983). "The question for review is simply whether the indictment may be read to allege a single unified scheme in each count." Id.

"In deciding a motion to dismiss, [the court] must accept factual allegations [in the Indictment as true] and disregard legal conclusions to determine whether the alleged facts constitute a crime." U.S. v. Harder, 168

4

F.Supp.3d 732, 737 (E.D.Pa. 2016)(citing U.S. v. Zauber, 857 F.2d 137, 144 (3d Cir. 1988)). Also, the court "must dismiss counts based on a statutory misinterpretation." Id. at 738 (citing U.S. v. Enmons, 410 U.S. 396, 93 S.Ct. 1007 (1973) ("dismissing indictment when statute does not proscribe the conduct charged"); U.S. v. Ferriero, 2015 WL 225806, *5 (D.N.J. Jan. 15, 2015)("a district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'")(citations omitted). "A motion to dismiss is 'not a permissible vehicle for addressing the sufficiency of the government's evidence.'" Id. (quoting U.S. v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)).

Defendant Huynh claims that Count One of the Superseding Indictment against him should be dismissed because it charges two separate offenses, i.e., wire fraud and bank fraud, in the same count under §1349. Huynh contends that Count One violates the prohibition against duplicitous pleading as well as the joinder rule found in Rule 8. He states that Count One alleges two distinct and separate conspiracy charges and that these charges have different statutory elements. He also states that the description in Count One alleges different facts to support bank fraud and wire fraud. He further states that the government did not clearly specify what bank fraud offense it was proceeding under rendering Count One insufficient.

The government states that "§1349 makes it a crime to conspire to

commit any of the offense[s] under Chapter 63 of Title 18 of the Untied States Code– which includes both wire and bank [fraud] in violation of sections 1343 and 1344 of that chapter." (Doc. 155 at 1). The government relies upon U.S. v. Braverman, 317 U.S. 49, 53 (1942), for the proposition that "[t]he conspiracy is the crime, and that is one, however diverse its objects."

In U.S. v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989), the Third Circuit stated, "[a]n indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." (internal quotations and citations omitted)." *See also* Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) (citation omitted); United States v. Olatunji, 872 F.2d 1161, 1168 (3d Cir. 1989). The court in *Rankin* also stated that "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." Id. (citations omitted).

As the government explains, "Count One charges a single conspiracy to defraud three separate layers of victims – jewelers by fraudulently obtaining watches, individuals whose identification information was used to obtain the watches, and banks from whom the conspirators fraudulently attempted to

obtain, and actually obtained, loans to pay for the watches using the fraudulent identification information." The government states that Count One also alleges that "in agreeing to commit both wire and the bank fraud offenses, Huynh and his conspirators agreed to engage in conduct that caused the transmission via interstate wire facilities of false information related to the fraudulent bank loan applications and watch purchases." Further, the government indicates that "Count One alleges that Huynh and his conspirators agreed to engage in a scheme *both* to defraud the banks *and* to obtain money or property in the form of bank loan proceeds by false statements." (Id. at 2-3)(emphasis original). The court concurs with the government and finds that the Indictment charges only one conspiracy with several objectives. Indeed, Huynh concedes that "there is no doubt that a single conspiracy can have multiple objectives without violating duplicity rules." (Doc. 160 at 2).

Additionally, Huynh could properly be charged with both provisions of §1344, i.e., §1344(1) and (2), as objects of the conspiracy. *See* U.S. v. Monostra, 125 F.3d 183 (3d Cir. 1997). The government, (Id. at 4), concludes:

> By charging both provisions of §1344, the indictment puts Huynh on direct notice that as a member of the conspiracy he is liable not only for defrauding lender banks under section (1), but also for engaging in a scheme to obtain the banks' loan funds by means of false statements to the banks, in violation of section (2), without any intent to defraud the bank victims as required for a violation of section (1). *See* Loughrin v. U.S., —U.S.—, 134 S.Ct. 2384, 2389-90 (2014).

7

The court finds that Count One is not duplicitous since the Indictment does not charge different offenses in this count, rather it "charges different methods of completing the same offense", i.e., a single conspiracy having multiple objectives. *See* U.S. v. Reyes, 930 F.2d 310 (3d Cir. 1991). "The Federal Rules of Criminal Procedure specifically authorize charging two different methods of committing a crime in a single count." Sourlis, 953 F.Supp. at 572 (citing Fed.R.Crim.P. 7(c)(1) ("It may be alleged in a single count that the means by which the defendant committed the offense are unknown or the defendant committed it by one or more specified means.")).

Thus, the court finds that Count One alleges that Huynh and his conspirators were involved in a single conspiracy to commit both wire fraud and bank fraud. As the court in Sourlis, 953 F.Supp. at 573, explained:

> Generally, "[a] conspiracy count may allege a purpose to commit multiple substantive offenses, and it is not duplicitous if it does so," United States v. Knox Coal Co., 347 F.2d 33, 39 (3d Cir.), *cert. denied*, 382 U.S. 904, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965) because "an agreement to commit several crimes is but one conspiracy." Gomberg, 715 F.2d at 846. Even if the conspiracy has many objectives, "the conspiracy is the crime ... however diverse its objects." Gomberg, 715 F.2d at 846.

The court will charge the jury under the model federal jury instructions that their verdict must be unanimous as to which of the objects of the conspiracy alleged in Count One they find Huynh agreed to pursue. Since the court finds that Count One is not duplicitous, this jury instruction will minimize any risk of prejudice to Huynh. This instruction will also avoid one of the

concerns raised by Huynh and identified by the Third Circuit in Starks, 515 F.2d at 117, i.e., "in a general verdict based upon two or more separate offenses joined in a single count, there is no way of knowing whether the jury was unanimous with respect to any of the offenses." Sourlis, 953 F.Supp. at 572.

Thus, defendant Huynh's motion to dismiss Count One of the Superseding Indictment, (Doc. 142), will be **DENIED**.


## II.     Motion to Transfer Venue to Central District of California

Defendant Huynh filed a motion seeking to transfer his case to the Central District of California pursuant to Fed.R.Civ.P. 21(b), (Doc. 144), based on the factors discussed in Platt v. Minn. Min. & Mfg. Co., 376 U.S. 240, 84 S.Ct. 769 (1964), which he claims favor transferring his case. Rule 21(b) provides that "[a] court may transfer the proceeding, or one or more counts, against the defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." "Motions under Rule 21(b) are addressed to the court's discretion." U.S. v. Hbaiu, 2013 WL 4698286, *4 (M.D.Pa. Aug. 30, 2013) (citing U.S. v. Coffee, 113 F.Supp.2d 751, 753 (E.D.Pa. 2000)). Further, the burden is on the defendant as the moving party "to show that transfer would serve the purpose of the rule, but the defendant need not show 'truly compelling circumstances for ... change ....[of venue, but rather that] all relevant things considered, the case would be

9

better off transferred to another district.'" Id. (citing In re United States, 273 F.3d 380, 388 (3d Cir. 2001)).

The Third Circuit applies the *Platt* ten-part test regarding an individual natural person defendant's motion to transfer. In re United States, 273 F.3d at 387-88. The Third Circuit identified the ten *Platt* factors a court should consider in deciding whether to transfer a case as follows:

> (1) location of [the] ... defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of [the] place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect the transfer.

Id.

Thus, Huynh must show that the balancing of the above interests weigh in favor of transferring his case to the Central District of California. Id. "No one of the *Platt* factors is dispositive, and a balance should be struck in determining which are of the greatest importance in the case before the court." Hbaiu, 2013 WL 4698286, *5. Further, "[t]he defendant must support a motion to transfer with 'affidavits, depositions, stipulations, or other documents tending to establish the necessary elements for a transfer.'" Hbaiu, 2013 WL 4698286, *5 (citing In re United States, 273 F.3d at 386).

Huynh states that he and his three co-defendants are residents of California, that he resided there since 1981, that he has no ties to Central Pennsylvania and, that he had his initial appearance in this case in the

10

Central District of California. However, he was subsequently arraigned in the Middle District of Pennsylvania on March 23, 2016. Huynh states that the alleged offenses occurred in 41 jewelry stores all over the country and only two of the stores were located in this district. Huynh also points out that the allegedly identified theft victims were all California residents and that the alleged conspiracy was initiated in California. He states that California was "ground zero" for the alleged conspiracy and that it is alleged to have been completely orchestrated there. He also states that the all of the alleged planning, preparation, and resale of the jewelry occurred in California.

It is of no moment that Huynh is from California. The Third Circuit has stated that "[i]t is important not to overlook the Supreme Court's statement in *Platt* that a defendant is not entitled to defend his case in his or her home district." In re United States, 273 F.3d at 388 (citing Platt, 376 U.S. at 245-46). Also, there is no dispute that portions of the alleged conspiracy were enacted in this district.

Next, Huynh states that most of the witnesses, including possible defense witnesses, as well as his co-defendants live in or near California. He also states that it is alleged 25 residents of California had their personal information and identities stolen from a car dealership in California and this "formed the foundation in the commission of the offenses." He points out that since the alleged victim jewelry stores and banks are scattered across the United States, it is easier for witnesses from these alleged victims to travel by

11

air to California than to "rural central Pennsylvania." Hunyh also contends that it would cause an extreme hardship to require both defense witnesses and prosecution witnesses to travel from California to Pennsylvania for trial.

Additionally, Huynh states that it will create a financial hardship to his family and witnesses to attend trial in this district and since he is indigent the taxpayers will have to pay this expense. Huynh has not provided proof as to the location of his family and witnesses. Nonetheless, the government has not objected to the cost to transport Huynh's family who will testify and his witnesses.

Initially, it cannot be ignored that Huynh's alleged three conspirators have all pled guilty in this district are awaiting sentence in prison here. Also, Huynh is in prison here awaiting his trial. As the government states, since the three co-defendants are expected to testify at Huynh's trial as prosecution witnesses it would be unduly burdensome and extremely costly for the government to transport them along with Huynh some 3000 miles to appear at trial in California. Nor can it be ignored that the defense counsel for all four defendants involved in the alleged conspiracy as well as the government's counsel are located in this district which undoubtedly would cause needless expense, burden and inconvenience for counsel. Huynh's contention that both he and the government can switch to California counsel would certainly dely the upcoming trial and needlessly cost the taxpayers considerably more money.

Additionally, even though the alleged conspiracy began in California, it was undisputedly wide spread throughout the country, including this district as well as several states identified by the government, (Doc. 154 at 3), and the witnesses from these locations testifying at trial will be closer to this district than to California. The government also notes that the documents and records upon which it will rely at trial as evidence are located in this district. Huynh does not contest this fact but maintains that the documents he received during discovery were not voluminous and that they can easily be transported from Pennsylvania to California.

In his reply brief, (Doc. 159), Huynh contends that the government failed to address all of the *Platt* factors and that the balancing of these factors weighs in favor of transferring his case to the Central District of California. The court did strike a balance of the *Platt* factors based on the factors which are of the greatest importance in this case. Moreover, Huynh failed to support his motion to transfer with the required "affidavits, depositions, stipulations, or other documents tending to establish the necessary elements for a transfer." Hbaiu, 2013 WL 4698286, *5 (citing In re United States, 273 F.3d at 386). He has not provided the names and addresses of his trial witnesses. He has not provided any affidavits stating the materiality of his witnesses' testimony. Nor has he submitted affidavits regarding "the relative ease of access to sources of documentary evidence." Id.

Thus, based on the *Platt* factors, defendant Huynh's motion to transfer

13

venue, (Doc. 144), will be **DENIED**.

### III.    Motion in Limine to Preclude Reference to the term "Victim"

Huynh's final motion seeks to preclude any reference to any party or witness as a "victim." He states that such a preclusion is necessary to ensure his Fifth Amendment right to a fair trial and that a reference by the government to any individual or entity as a victim during his trial is highly prejudicial. He also states that use of the term "victim" at trial by the government will violate his presumption of innocence since it will appear to the jury that the particular individual or party called a victim was injured by him and that a crime was in fact committed. Huynh further contends that if the government refers to any witness as a victim, it will imply that it is expressing its belief about that witness's credibility and that this witness's testimony should be afforded more weight which is prohibited.

Additionally, Huynh states that F.R.E. 403 should preclude the government from referring to any witness or party as victim since "[t]he prosecution's conclusion, judgment and assessment exhibited by the word 'victim' have no probative value." (Doc. 147 at 3). He further states that it is within the jury's sole province to decide, beyond a reasonable doubt, whether a witness or party is, in fact, a victim. He claims that the term "victim" will lead the jury to believe that he committed a wrong and that this fact has been proven.

14

Finally, Huynh argues that referring to any witness or party as a victim usurps the jury's role as the trier of the facts which includes whether there is a victim in the case. He concludes that "[t]here cannot be a victim unless the jury determines that there was a crime or wrong committed." (Id.).

In response, the government points out that its references to witnesses as victims at trial will not evoke sympathy and will not be prejudicial to Huynh since this case involves fraud and identity theft crimes in which the alleged losses are mainly financial and since most of the victims are businesses and banks. The government explains, (Doc. 156 at 2), as follows:

> The references to the alleged identity theft and jewelry store victims and the alleged bank victims represent designations that readily identify categories of entities and individuals that allegedly suffered an economic loss as a result of the conspiracy and fraud scheme alleged in the indictment. The indictment alleges that personal identification information for 25 individuals was used to create counterfeit driver's licenses, that the co-conspirators obtained and attempted to obtain watches under false pretenses from separate 41 jewelry stores, and that five lenders received false loan applications upon the compromised identification information. The references to the three category of victims simply reflects the nature and manner of the economic losses allegedly sustained and will do more to assist the jury in understanding the participants and nature of the alleged transactions than provoke bias or sympathy.

Finally, the government states that any potential prejudice will be dissipated during voire dire when the jury is selected and by the court's use of the standard jury instructions that the indictment represents only allegations and not evidence. Indeed, the court will utilize the model federal jury instruction as follows:

15

An indictment is just the formal way of specifying the exact crime the defendant is accused of committing. An indictment is simply a description of the charge against a defendant. It is an accusation only. An indictment is not evidence of anything, and you should not give any weight to the fact that the defendant has been indicted in making your decision in this case.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. According to the Third Circuit, "Rule 401 does not raise a high standard." Hurley v. Atl. City Police Dep't, 174 F.3d 95, 109–10 (3d Cir. 1999) (citation omitted). Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Unfair prejudice is prejudice which "cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found." Goodman v. Pa. Tpk. Comm'n, 293 F.3d 655, 670 (3d Cir. 2002) (citations omitted). "Prejudice does not simply mean damage to the opponent's cause." Id.

Assuming, arguendo, that referring to a witness or party as a victim may be prejudicial to Huynh, nonetheless, the court finds under FRE 403 that the probative value of using the term "victim" as detailed by the government above outweighs the risk of any unfair prejudice to Huynh. Simply because a

16

person or entity involved in this case is accurately referred to as a "victim," in no way furthers the governments burden to prove beyond a reasonable doubt that Huynh is, in fact, guilty of a crime. Therefore, the court will **DENY** Huynh's motion in limine. (Doc. <u>146</u>).

## IV.   CONCLUSION

For the foregoing reasons, the court will **DENY** defendant Huynh's Motion to Dismiss Count One of the Superseding Indictment, (Doc. <u>142</u>), Huynh's motion to transfer venue, (Doc. <u>144</u>), and Huynh's motion in limine, (Doc. <u>146</u>). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: December 22, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2014 CRIMINAL MEMORANDA\14-0275-01.wpd

17